UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH RODRIGUEZ,

       Plaintiff,

v.

UNITED MERCHANT ASSET RECOVERY, LLC,
UNITED MERCHANT ASSET RECOVERY OF WNY, LLC,
ROSSI HACKERMAN AND ASSOCIATES, LLC,
ROSS WRIGHT & GROUP INC,
BROWN & BREWER INC,
EASTVIEW ADVISORY GROUP LLC,
MDRH HOLDINGS LLC,
HESTON F. MCCLAIN,
CHANTELLE NICOLE MCCLAIN,
MICHAEL DAVID ENZINNA,
MICHAEL JON DITULLIO, and
RYAN G HAYES,

       Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*

2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay loans. This scheme, similar to others operated by virtually countless entities located in and around Miami Florida, Atlanta, Georgia, Buffalo, New York, and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The

1

Shakedown" or "The Shake," that includes variations of the following: The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often, the debt is time-barred. Often, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mailboxes.

3.      The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants. See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint. The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft.

**II.     Jurisdiction**

6.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331.

**III.    Parties**

7.     Plaintiff Sarah Rodriguez is an adult, natural person. Ms. Rodriguez is a

"consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Rodriguez is a

"person" as the term is defined and used in the DPPA.

8.     Defendant United Merchant Asset Recovery, LLC ("UMAR") is an active New

York limited liability company, formed February 10, 2011, with a registered address of 210

Walnut Street, Second Floor, Suite 18, Lockport, New York 14094-3725. UMAR also has

operated at 272 East Avenue, Lockport, New York 14094-3826 and 859 Davison Road, Lockport,

New York 14094-5217. UMAR receives mail at P.O. Box 545, Lockport, New York 14095-0545.

UMAR sometimes uses telephone number 585-283-1745. UMAR uses interstate commerce and

the mails in a business the principal purpose of which is the collection of debts. UMAR regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. UMAR is a "debt collector" as the term is defined and used in the FDCPA. UMAR

is a "person" as the term is defined and used in the DPPA.

9.     On June 22, 2012, defendant Heston F. McClain registered the internet domain

www.unitedmerchantassetrecovery.com through GoDaddy.com, LLC, account no. 5377853, and

provided the following contact and billing information: Address - 210 Walnut Street, Floor 2,

Suite 18, Lockport, New York 14094; email - unitedmerchantassetrecoveryllc@gmail.com;

telephone - 716-514-4872 and 877-599-2008; and fax - 716-201-1620. Defendants use the

domain to send and receive email using the address info@unitedmerchantassetrecovery.com. Until recently, the domain linked to an internet website that described UMAR as "one of New York's premier collections firms" and provided contact telephone numbers 855-231-7665 and 866-812-0592 (fax). On June 12, 2013, Mr. McClain used the GoDaddy account to register the domains www.jmkassociates.com and www.franklinmitchellandassociates.biz. On September 10, 2013, Mr. McClain used the GoDaddy account to register the domain www.siegeldonovanwalsh.com. On July 29, 2015, Mr. McClain used the GoDaddy account to register the domain www.whitherspoonryan.com.

10.     The Better Business Bureau for Lockport, New York maintains an internet website that contains a consumer warning regarding UMAR and includes multiple consumer complaints, alleging that for a period of years, UMAR has continued to engage in the same unlawful debt collection practices that are described in this complaint. According to the BBB, UMAR receives mail at P.O. Box 545, Lockport, New York 14095-0545, and the telephone numbers used by UMAR in connection with the debt collection scam include 585-286-3933 (fax), 585-366-0553, 585-366-0557, 585-471-2693, 585-645-7745, 844-226-6460, 855-219-4669, 866-812-0592 (fax), 877-599-2008 and 877-688-3879.

11.     UMAR directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

12.     Defendant United Merchant Asset Recovery of WNY, LLC ("UMARWNY") is an active New York limited liability company, formed September 8, 2017, with a registered address of 7014 13th Avenue, Suite 202, Brooklyn, New York 11228, which is merely the office of United States Corporation Agents, Inc. UMARWNY uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UMARWNY regularly collects

or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UMARWNY is a "debt collector" as the term is defined and used in the FDCPA. UMARWNY is a "person" as the term is defined and used in the DPPA.

13.    UMARWNY directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

14.    Defendant Rossi Hackerman and Associates, LLC ("RHA") is an active New York limited liability company, formed July 12, 2017, with a registered address of 7014 13th Avenue, Suite 202, Brooklyn, New York 11228, which is merely the office of United States Corporation Agents, Inc. RHA has operated at 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094-3725, 272 East Avenue, Lockport, New York 14094-3826 and 859 Davison Road, Lockport, New York 14094-5217. RHA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RHA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. RHA is a "debt collector" as the term is defined and used in the FDCPA. RHA is a "person" as the term is defined and used in the DPPA.

15.    On October 16, 2017, Defendants anonymously registered the internet domain www.rossihackermanandassociates.com through GoDaddy.com, LLC. The identities of the registrants will be obtained from GoDaddy.com, LLC in discovery. Defendants registered the domain using the email rossihackermanandassociates@gmail.com. The identities of the entities registered to this email will be obtained from Google in discovery. Defendants use the domain to send and receive email using the address info@rossihackermanandassociates.com. The domain links to an active internet website that states RHA is in the business of collecting consumer debts. The website also refers to RHA by one of Defendants' unregistered, assumed names,

Anderson, Grey and Associates, which sometimes has used telephone numbers 844-284-0755, 866-681-6714 and 888-979-4393 in connection with the debt collection scam.

16.     The Better Business Bureau for Lockport, New York maintains an internet website that contains a consumer warning regarding RHA and posts multiple consumer complaints, alleging that for a period of years, RHA has continued to engage in the same unlawful debt collection practices that are described in this complaint. According to the BBB, RHA receives mail at P.O. Box 1665, Lockport, New York 14095-1665, and the telephone numbers used by RHA in connection with the debt collection scam include 585-207-0809, 866-812-0592, 877-799-9028 and 888-742-7893.

17.     RHA directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

18.     Defendant Ross Wright & Group Inc ("RWG") is an active New York corporation, formed May 6, 2015, with a registered address of 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094-3725. RWG likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. Documents filed on behalf of RWG with the State of New York state that defendant Heston F. McClain is an officer of RWG. RWG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RWG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. RWG is a "debt collector" as the term is defined and used in the FDCPA. RWG is a "person" as the term is defined and used in the DPPA.

19.     The Better Business Bureau for Lockport, New York maintains an internet website that contains a consumer warning regarding RWG and posts dozens of consumer

complaints, alleging that for a period of years, RWG has continued to engage in the same unlawful debt collection practices that are described in this complaint. According to the BBB, RWG is located at 50 East Avenue, Suite E, Lockport, New York 14094, and the telephone numbers used by RWG in connection with the debt collection scam include 877-799-9028 and 888-875-7896.

20.     RWG directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

21.     Defendant Brown & Brewer Inc ("B&B"), FEIN 46-090xxxx, is an active New York corporation, formed August 29, 2012, with a registered address of Heston F. McClain, 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094. B&B likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. B&B uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. B&B regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. B&B is a "debt collector" as the term is defined and used in the FDCPA. B&B is a "person" as the term is defined and used in the DPPA.

22.     According to the Better Business Bureau for Lockport, New York, B&B is a debt collection agency that receives mail at P.O. Box 544, Lockport, New York 14095-0544, and has used the following telephone numbers to conduct a debt collection scam: 716-210-6203, 716-568-7669, 855-851-8424 and 877-614-5054.

23.     B&B directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

24.     Defendant Eastview Advisory Group LLC ("EAG") is an active New York

corporation, formed April 19, 2017, with a registered address of 210 Walnut Street, Second Floor, Lockport, New York 14094-3725. EAG likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. EAG sometimes uses telephone number 844-378-7772. EAG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. EAG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. EAG is a "debt collector" as the term is defined and used in the FDCPA. EAG is a "person" as the term is defined and used in the DPPA.

25.     On February 19, 2018, Defendants anonymously registered the internet domain www.eastviewadvisory.org through GoDaddy.com, LLC. The identities of the registrants will be obtained from GoDaddy.com, LLC in discovery. The domain links to an active internet website that states EAG is in the business of collecting consumer debts and provides a contact telephone number 844-378-7772 and falsely states that EAG is in "Chicago, Illinois."

26.     EAG directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

27.     Defendant MDRH Holdings LLC ("MDRH") is an active New York limited liability company, formed August 4, 2016, with a registered address of 227 Bewley Building, Lockport, New York 14094. MDRH is likely an abbreviation for its managers' names, Defendants Matthew DiTullio and Ryan Hayes. MDRH likely operates its debt collection call center in the Bewley Building. Defendants Matthew Jon DiTullio and Ryan G Hayes are owners, officers, managers, employees and agents of MDRH. Upon information and belief, non-party Kendra Lee DiTullio may also be a manager of MDRH, but that will need to be determined in discovery. Ms. DiTullio is a police lieutenant of the Lockport Police Department, having served

with the department for over 16 years. MDRH uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. MDRH regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. MDRH is a "debt collector" as the term is defined and used in the FDCPA. MDRH is a

"person" as the term is defined and used in the DPPA.

28.     According to the Better Business Bureau for Lockport, New York, MDRH is a

debt collection agency located at 227 Bewley Building, Lockport, NY 14094.

29.     MDRH directly and indirectly participated in the unlawful efforts to collect an

alleged debt from Ms. Rodriguez as described in this complaint.

30.     United Merchant Asset Recovery, LLC; United Merchant Asset Recovery of

WNY, LLC; Rossi Hackerman and Associates, LLC; Ross Wright & Group Inc; Brown &

Brewer Inc; Eastview Advisory Group LLC; and MDRH Holdings LLC; are collectively referred

to in this complaint as the "Corporate Defendants."

31.     The Corporate Defendants purport to receive mail at PO Box 185, Dallas, TX

75211.

32.     Defendant Heston F. McClain is a natural person, age 32, purportedly residing at

4223 Wick Road, Lockport, New York 14094-9449. Mr. McClain is an owner, officer, manager,

employee and agent of the Corporate Defendants. Mr. McClain has sometimes used the email

address big.hess@yahoo.com and telephone number 716-713-7768 to operate Defendants' debt

collection scheme. Mr. McClain uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. Mr. McClain regularly collects or attempts

to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr.

McClain is a "debt collector" as the term is defined and used in the FDCPA. Mr. McClain is a

"person" as the term is defined and used in the DPPA.

33.     Mr. McClain (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Rodriguez as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents in attempts to collect an alleged debt from Ms. Rodriguez as alleged in this complaint.

34.     Mr. McClain has used multiple telephone numbers to create, organize, operate and manage his debt collection companies, including: 716-713-7768, 716-433-8894, 716-438-7103, 716-438-7660, 716-438-9157, 716-514-4872, 716-525-3420, 716-990-4607, 716-201-1617, 716-201-1620 and 716-525-3420.

35.     Mr. McClain directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Rodriguez as described in this complaint.

36.     Defendant Chantelle Nicole McClain is a natural person, age 43, purportedly residing at 98 Nichols Street, Lockport, New York 14094-4814. Ms. McClain is an owner, officer, manager, employee and agent of the Corporate Defendants. Ms. McClain has sometimes

used the email address chantelle.mcclain@att.net. Ms. McClain uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts. Ms. McClain

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Ms. McClain is a "debt collector" as the term is defined and used in the

FDCPA. Ms. McClain is a "person" as the term is defined and used in the DPPA.

37.    Ms. McClain (a) created the collection policies and procedures used by the

Corporate Defendants and their employees and agents, in connection with their common efforts

to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of

the Corporate Defendants, (c) oversaw the application of the collection policies and procedures

used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved

and ratified the tactics and scripts used by the Corporate Defendants and their employees and

agents to collect debts from consumers, including the tactics and scripts that were used to attempt

to collect an alleged debt from Ms. Rodriguez as alleged in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their

employees and agents in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices

used by the Corporate Defendants and their employees and agents in attempts to collect an

alleged debt from Ms. Rodriguez as alleged in this complaint.

38.    Ms. McClain directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Ms. Rodriguez as described in this complaint.

39.    Defendant Michael David Enzinna is a natural person, age 39, purportedly

residing at 5608 Keck Road, Lockport, New York 14094-9307. Mr. Enzinna is an owner, officer,

manager, employee and agent of the Corporate Defendants. Mr. Enzinna uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Enzinna regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Enzinna is a "debt collector" as the term is defined and used in the FDCPA. Mr. Enzinna is a "person" as the term is defined and used in the DPPA.

40.      Mr. Enzinna maintains a profile on the internet website, www.linkedin.com, stating that he is the "Owner/CEO" of defendant United Merchant Asset Recovery, LLC.

41.      Mr. Enzinna (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Rodriguez as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents in attempts to collect an alleged debt from Ms. Rodriguez as alleged in this complaint.

42.      Mr. Enzinna directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Rodriguez as described in this complaint.

43.      Defendant Matthew Jon DiTullio is a natural person, age 49, purportedly residing at 3563 Lockport Olcott Rd, Lockport, NY 14094-1146. Alternatively, Mr. DiTullio resides at

6646 Heather Dr., Lockport, New York, 14094-1112. Mr. DiTullio is the husband of non-party Kendra L. Ditullio, formerly known as Kendra L. Hayes, a police officer employed by the City of Lockport. Mr. DiTullio is an owner, officer, manager, employee and agent of defendant MDRH. Mr. DiTullio uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. DiTullio regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. DiTullio is a "debt collector" as the term is defined and used in the FDCPA. Mr. DiTullio is a "person" as the term is defined and used in the DPPA.

44.     Mr. DiTullio (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Rodriguez as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents in attempts to collect an alleged debt from Ms. Rodriguez as alleged in this complaint.

45.     Mr. DiTullio directly and indirectly participated in the efforts to collect an alleged debt from Ms. Rodriguez that are described in this complaint.

14

46.     Defendant Ryan G. Hayes ("Hayes") is a natural person, age 28, purportedly residing at 34 Kingston Circle, Lockport, New York 14094-5606. Mr. Hayes also has resided in an apartment located at 115 West Avenue, Lockport, New York 14094-3609, owned by non-party Anthony DiTullio, the father of defendant Matthew Jon DiTullio. Mr. Hayes is an owner, officer, manager, employee and agent of defendant MDRH. Mr. Hayes uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Hayes regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Hayes is a "debt collector" as the term is defined and used in the FDCPA. Mr. Hayes is a "person" as the term is defined and used in the DPPA.

47.     Mr. Hayes (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Rodriguez as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents in attempts to collect an alleged debt from Ms. Rodriguez as alleged in this complaint.

48.     Mr. Hayes directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Rodriguez that are described in this complaint.

49.     Defendants have operated their debt collection scheme using numerous, unregistered business names, including: Addison Recovery Solutions; Anderson, Grey & Associates; Brown, Brewer & Associates; Division of Courier Services; Franklin, Mitchell & Associates; James, Rossi & Associates; JMK & Associates; Kirkland, Lewis & Associates; Kramer Klein Group; Legal Outsource; McArthur, Allen & Associates; National Acquisition Services; National Inquisition Services; Pre-Counsel Summons Division; Priority Legal Care Services; Priority Legal Caring Services; Priority Legal Hearing Services; Priority Legal Services; Ross Wright Mediation Group; Schwartz & Goldstein Consulting Group; V & R Recovery; and Walter, Riley & Associates.

50.     Defendants maintain an account (No. 49613) with Vonage Business through which Defendants obtain some of the telephone numbers that are used by Defendants and their employees and agents to communicate with consumers in furtherance of Defendants' debt collection scam. Defendants have provided Vonage with the following contact information: Company name - Ross Wright & Group Inc, c/o Chantelle McClain; Address - 859 Davison Road, Lockport, New York 14094; Telephone - 716-713-7768; Email Address - info@unitedmerchantassetrecovery.com; and Name on Account for Payment - Michael D. Enzinna. Telephone number 716-713-7768 is a cellular telephone number registered to defendant Heston F. McClain.

51.     Defendants have used their Vonage account to obtain hundreds of telephone numbers to contact consumers. Defendants periodically obtain new telephone numbers from Vonage for the purpose of contacting consumers while continuing to conceal their identities.

52.     Defendants maintain an account (No. XXX4292) with Nextiva, Inc. through

which Defendants obtain some of the telephone numbers that are used by Defendants and their employees and agents to communicate with consumers in furtherance of Defendants' debt collection scam. Defendants have provided Nextiva with the following contact information: Company Name – East View Advisory Group; Account Manager – Tim Harvey; Address – 400 W. Ave., Lockport, NY 14094; Email – eastviewadvisorygroup@gmail.com; Primary Phone – 716-930-2835; Billing Name – Rossi Hackerman and Associ; and Billing Address – 400 W Ave., Lockport, NY 14094. Discovery will need to be conducted to determine whether "Tim Harvey" is an alias for one of the defendants or instead is a separate individual to be named as an additional defendant in this action.

53.     Defendants have used their Nextiva account to obtain hundreds of telephone numbers to contact consumers. Defendants periodically obtain a new series of telephone numbers from Nextiva for the purpose of contacting consumers while continuing to conceal their identities. Between January 2, 2019 and July 17, 2019, Nextiva provided Defendants with telephone numbers 773-340-4663 and 872-777-8944, which have been used by Defendants to communicate with consumers. Specifically, Defendants have called consumers from 773-340-4663 and left voicemail messages on consumers' telephones stating to call 872-777-8944 to find out who filed lawsuits against consumers. As is described below, no lawsuits are ever filed by Defendants against consumers.

54.     Defendants currently use the following telephone numbers to communicate with consumers in furtherance of Defendants' debt collection scam: 312-224-8588, 312-766-0680, 312-766-0681, 312-766-0682, 312-766-0683, 312-766-0684, 312-766-0685, 312-766-4210, 312-766-4211, 312-766-4212, 312-766-4280, 312-878-5627, 312-878-5629, 312-878-5632, 312-999-4060, 315-853-4000, 315-948-8568, 480-223-9340, 516-430-5062, 585-207-0354, 585-207-

0355, 585-207-0356, 585-207-0359, 585-207-0365, 585-207-0378, 585-207-0380, 585-207-0383, 585-207-0393, 585-207-0403, 585-207-0809, 585-207-0866, 585-207-0880, 585-207-0882, 585-207-0883, 585-207-0884, 585-207-0889, 585-207-0891, 585-207-0895, 585-207-0996, 585-207-1014, 585-207-1784, 585-207-2101, 716-235-2316, 716-930-2835, 773-340-4663, 814-351-0205, 844-378-7772, 844-838-1453, 844-884-7218, 844-892-4193, 855-978-6862, 866-812-0592, 872-444-3214, 872-777-8944, 877-369-7913, 877-369-7917, 888-246-0247, 888-304-8987, 888-667-0533, and 972-598-9538.

55.     Defendants sometimes process payments that they have unlawfully coerced from consumers through a non-party entity named eProcessing Network, LLC, a Texas limited liability company, located at 1415 North Loop West, Suite 1185, Houston, Texas 77008.

56.     Defendants also sometimes process payments that they have unlawfully coerced from consumers through a non-party entity named OneSpan Inc., dba eSignLive, an Illinois corporation, located at 121 West Wacker, Suite 2050, Chicago, Illinois 60601.

57.     All Defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, collecting debts for the benefit of each other, and making each Defendant jointly and severally for the unlawful acts of other Defendants.

58.     All Defendants operate as a single entity, commonly owned, operated and managed, operating from the same office space, sharing the same staff, equipment and telephone lines, and commingling revenue, expenses and payroll.

59.     Non-party Greenburg & Marshall Inc ("G&M") is an active New York corporation, formed November 21, 2012, with a registered address of Heston F. McClain, 210

Walnut Street, Second Floor, Suite 18, Lockport, New York 14094. G&M likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. G&M uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. G&M regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. G&M is a "debt collector" as the term is defined and used in the FDCPA.

60.     According to the Better Business Bureau for Lockport, New York, G&M is a debt collection agency that receives mail at P.O. Box 1363, Lockport, New York 14095-1363, and has used the following telephone numbers to conduct a debt collection scam: 866-584-0922.

61.     It will need to be determine in discovery whether G&M directly or indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

62.     Non-party Whitherspoon Ryan & Associates Inc ("WRA") is an active New York corporation, formed November 23, 2012, with a registered address of Heston F. McClain, 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094. WRA likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. WRA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. WRA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. WRA is a "debt collector" as the term is defined and used in the FDCPA.

63.     According to the Better Business Bureau for Lockport, New York, WRA is a debt collection agency that receives mail at P.O. Box 1522, Lockport, New York 14095-1522, and has used the following telephone numbers to conduct a debt collection scam: 877-489-8329.

64.     It will need to be determined in discovery whether WRA directly or indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

65.     Non-party Merchant Recovery Solutions Inc ("MRS") is an active New York corporation, formed November 26, 2012, with a registered address of Heston F. McClain, 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094. MRS likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. MRS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MRS is a "debt collector" as the term is defined and used in the FDCPA.

66.     It will need to be determined in discovery whether MRS directly or indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

67.     Non-party Primary Debt Solutions Inc ("PDS") is an active New York corporation, formed January 7, 2014, with a registered address of Heston F. McClain, P.O. Box 545, Lockport, New York 14095-0545. PDS likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. PDS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PDS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PDS is a "debt collector" as the term is defined and used in the FDCPA.

68.     It will need to be determined in discovery whether PDS directly or indirectly

participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

69.     Non-party Bi Coastal Solutions Inc ("BCS") is an active New York corporation, formed January 8, 2014, with a registered address of Heston F. McClain, P.O. Box 545, Lockport, New York 14095-0545. BCS likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. BCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BCS is a "debt collector" as the term is defined and used in the FDCPA.

70.     According to the Better Business Bureau for Lockport, New York, BCS is a debt collection agency that receives mail at P.O. Box 320, Lockport, New York 14095-0320, and has used the following telephone numbers to conduct a debt collection scam: 585-471-2693.

71.     On January 7, 2014, Defendants anonymously registered the internet domain www.bicoastalsolutionsincorporated.com through GoDaddy.com, LLC. The identities of the registrants will be obtained from GoDaddy.com, LLC in discovery. The domain previously linked to an internet website that stated BCS is in the business of collecting consumer debts and provided a contact telephone number 877-448-5584.

72.     It will need to be determined in discovery whether BCS directly or indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

73.     Non-party Western Acquisition Group Inc ("WAG") is an active New York corporation, formed January 8, 2014, with a registered address of Heston F. McClain, P.O. Box

545, Lockport, New York 14095-0545. WAG likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. WAG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. WAG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. WAG is a "debt collector" as the term is defined and used in the FDCPA.

74.     According to the Better Business Bureau for Lockport, New York, WAG is a debt collection agency that operates at 50 East Avenue, Lockport, New York 14094-3717 and has used the following telephone numbers to conduct a debt collection scam: 585-286-3960 (fax), 940-393-3995 and 844-809-8788.

75.     It will need to be determined in discovery whether WAG directly or indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

76.     Non-party JD Associates of WNY Inc ("JDA") is an active New York corporation, formed May 6, 2015, with a registered address of Heston F. McClain, 210 Walnut Street, Second Floor, Suite 18, Lockport, New York 14094-3725. JDA likely operates its debt collection call center at 50 East Avenue, Lockport, New York 14094-3717, on the second floor, above the pharmacy. JDA sometimes uses telephone numbers 585-391-8643 and 844-224-3663. JDA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JDA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JDA is a "debt collector" as the term is defined and used in the FDCPA.

77.     It will need to be determined in discovery whether JDA directly or indirectly

participated in the unlawful efforts to collect an alleged debt from Ms. Rodriguez as described in this complaint.

78.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1502 (D.N.M. 1994); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.*, No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

79.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Sweet v. Audubon Financial Bureau, LLC*, No. CV-13-258 BRB/WPL, 2016 WL 9777176, at *4 (Apr. 27, 2016) (*adopted in relevant part* 2016 WL 9777177, at *7 (June 27, 2016)); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847

F.Supp.2d 994, 1004-06 (W.D. Mich. 2012).

## IV.    Facts

80.    Sometime prior to January 31, 2010, plaintiff Sarah Rodriguez obtained a loan from Santander Bank, N.A. ("Santander"), or a predecessor in interest to Santander, and used that loan to purchase a motor vehicle for personal, family and household purposes. Santander assigned the account the number 5445515. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

81.    In or about January of 2010, Ms. Rodriguez fell behind on her monthly payments to Santander and her account went into default. Ms. Rodriguez has not made a payment on the account since 2010.

82.    Sometime after her account went into default, Ms. Rodriguez's vehicle was voluntarily repossessed and sold. The proceeds of the sale off-set the alleged amount due.

83.    Any claim that Santander may have had against Ms. Rodriguez in connection with the account became time-barred and judicially unenforceable in 2014 by operation of the applicable four-year statute of limitations.

84.    Ms. Rodriguez disputes owing any money to Santander or anyone else in connection with the account.

85.    Ms. Rodriguez expressly refuses to pay any money to Santander or anyone else in connection with the account.

86.    In 2014, Santander offered to sell more than 100,000 delinquent automobile loan accounts. As part of that process, Santander provided in-depth and unmasked information regarding the portfolio of accounts to multiple, prospective purchasers and brokers for evaluation.

87.     Between July 25, 2014 and June 9, 2015, Santander in a series of transactions sold the more than 100,000 delinquent automobile loan accounts to non-party Cascade Capital LLC ("Cascade'), a California limited liability company, including Ms. Rodriguez's account and related, alleged, time-barred debt that was sold to Cascade on July 28, 2014.

88.     Although Cascade did not know it at the time, one or more of the prospective purchasers or brokers that had reviewed the portfolio of accounts received from Santander, retained and stole the information for the more than 100,000 Santander accounts, including information regarding Ms. Rodriquez and her account.

89.     Non-party Cascade claims that it currently owns the account, but that it was placed for collection with non-party Velocity Investments LLC ("Velocity") on July 28, 2014. Cascade assigned the account a new number: 1022643869.

90.     Non-party Velocity claims that it purchased the account from Cascade on July 28, 2014 and that Cascade no longer owns the account. Velocity assigned the account a new number: VI422618. Velocity claims the original account number was 30000154455151000. This appears to be the original account number, but with six additional digits placed in front of and four additional digits placed after the true original account number.

91.     According to Velocity, Ms. Rodriquez has not paid any money on the account since November 22, 2010. Velocity claims to own all right, title and interest in the account, and is adamant that neither the entities named as defendants in this action, nor any other entity, has the right to attempt to collect the account and related, alleged debt.

92.     On August 8, 2017, Cascade filed a lawsuit against an entity named DRS Processing LLC ("DRS"), dba Miller Stark Klein & Associates, in the United States District Court for the Western District of North Carolina, Charlotte Division, Case No. 3:17-cv-470,

alleging that DRS had obtained stolen information for the more than 100,000 delinquent automobile loan accounts that had been purchased by Cascade from Santander, and that DRS had unlawfully used the stolen information to contact and threaten consumers with litigation and prosecution unless the consumers paid money to DRS. According to documents filed by DRS and its owner, Daryl Miller, the stolen information was contained in thirty-one portfolios purchased during 2017 by DRS from a person named D'Juan Dale Leverette. DRS and Mr. Miller paid for the stolen information by wiring more than $200,000.00 to an account owned by Mr. Leverette.

93.     From at least 2017, to the present, Mr. Leverette and his associates have continued to sell and resell to multiple entities, information for the more than 100,000 stolen Santander account.

94.     From at least 2018, to the present, Mr. Leverette and his associates have continued to sell to defendants United Merchant Asset Recovery, LLC, United Merchant Asset Recovery of WNY, LLC, Rossi Hackerman and Associates, LLC, Ross Wright & Group Inc, Brown & Brewer Inc, Eastview Advisory Group LLC, Heston F. McClain, Chantelle Nicole McClain and Michael David Enzinna, portfolios of thousands of stolen or counterfeit accounts, including stolen or counterfeit Santander accounts, and including Ms. Rodriguez's stolen Santander account.

95.     The Defendants named in this action have actual knowledge that the Santander accounts they have continued to purchase from Mr. Leverette are stolen or counterfeit. Specifically, on February 4, 2019, a lawsuit captioned *Jack Hitsman v. United Merchant Asset Recovery, LLC, et al.,* was filed against UMAR, UMARWNY, RHA, RWG, B&B, EAG, Mr. McClain, Ms. McClain, and Mr. Enzinna, in the United States District Court for the Western

District of Michigan, Case No. 1:19-cv-82, (W.D. Mich. Feb. 4, 2019), alleging in detail that Mr. Leverette regularly sells stolen or counterfeit Santander accounts.

96.     Despite the foregoing, Defendants purchased Ms. Rodriguez's stolen account information from Mr. Leverette and proceeded to contact and threaten Ms. Rodriguez with litigation, prosecution and other adverse consequences unless Ms. Rodriguez paid money to Defendants, as described below.

97.     On June 28, 2019, Defendants' employee and agent (known as a "point caller") placed a call to Ms. Rodriquez's cellular telephone and left the following message on Ms. Rodriquez's voice mail: "This message is solely intended for Sarah Rodriguez. This is Kelly Rosley calling with National Process Services for McKinley County. I was calling to remind you that today is your scheduled service date and I will be stopping out at your residency and or current place of employment. Now if you have any final questions or concerns, you will need to contact Aaron DeMillo at 972-598-9538."

98.     On June 28, 2019, Defendants' employee and agent placed another call to  Ms. Rodriguez's cellular telephone and stated to Ms. Rodriguez that she worked with the "Compliance Office," that a process server was attempting to serve Ms. Rodriguez with a "subpoena to appear in court," and directed Ms. Rodriguez to call a person named "Aaron Demillo" at 972-598-9538 to obtain additional information regarding the matter.

99.     On June 28, 2019, Ms. Rodriguez placed a call to 972-598-9538, that was answered by a person who identified himself as "Aaron DeMillo with Schwartz & Goldstein Consulting Group." Defendants' employee and agent stated that Defendants' private process server was attempting to serve Ms. Rodriguez with an order to appear in court. Defendants' employee and agent stated that normally, the Sheriff's Department would serve Ms. Rodriguez

with the order to appear in court, but in this instance, the order was being served by a process server working with Defendants' Compliance Office.

100.    On July 9, 2019, Defendants' employee and agent, who identified himself as Aaron DeMillo with Schwartz & Goldstein, placed a call to Ms. Rodriguez's cellular telephone, interrupting her from work, and spoke with Ms. Rodriguez for more than thirty-five minutes. Mr. DeMillo stated that Ms. Rodriguez owed a balance of $5,693.32 for a delinquent Santander auto loan, but that if Ms. Rodriguez paid $1,144.52 to Defendants by July 30, 2019, Defendants would settle the account as "paid in full" and derogatory information regarding the account would be removed from Ms. Rodriguez's credit reports and improve Ms. Rodriguez's credit score. Mr. DeMillo warned that if Ms. Rodriguez did not pay money to Defendants, Ms. Rodriguez would be taken to court and a judgment would enter against Ms. Rodriguez in the amount of $11,253.53 for damages, court costs, interest and other fees, and Ms. Rodriguez's wages would then be garnished. Mr. DeMillo told Ms. Rodriguez that he could offer her a settlement to consider the debt "paid in full" if she agreed to pay $1,144.52 by July 30, 2019. Mr. DeMillo stated that if Ms. Rodriguez did not pay $1,144.52 by July 30, 2019, would be summoned to court and would have her wages garnished.

101.    On July 11, 2019, Defendants' employee and agent placed a call to Ms. Rodriguez's cellular telephone and left the following message on Ms. Rodriquez's voice mail:the following message: "This message is intended for Sarah Rodriguez. Ms. Rodriguez, this is Aaron DeMillo. I'm with Schwartz and Goldstein Law Group. I spoke with you the other day in regards to a client that retained our services here by the name of Santander for McKinley County. If you can, please give me a call back. I do have to write a recommendation for the attorney. Unfortunately, if I do not hear from you I will have to write the recommendation for them to

pursue the case in McKinley County Court. My phone number is 972-598-9538. And again, this is Aaron DeMillo with the law office of Schwartz and Goldstein Group. Thank you."

102.    On July 15, 2019, Defendants sent an email to Ms. Rodriguez, with an attached letter agreement dated July 15, 2019, stating: (a) Schwartz & Goldstein Consulting Group had acquired Ms. Rodriguez's Santander account; (b) the account had been charged off by Santander on May 31, 2017; (c) Ms. Rodriguez owed a balance of $5,693.32; (d) Defendants were willing to settle the account for $1,144.52; and (e) "any payments made toward this account will reflect on your bank statement as MDRH Holdings LLC." Also attached to the email was a form, authorizing "United Merchant Asset Recovery on behalf of Schwartz & Goldstein Consulting Group" to charge Ms. Rodriguez's credit card to settle the alleged debt. The letter and authorization form each contained a false mailing address for Defendants of P.O. Box 185, Dallas, Texas 75211. Ms. Rodriguez refused to sign the letter or the authorization form. A copy of the email, letter and authorization form are attached as Exhibit A.

103.    On July 15, 2019, Defendants' employee and agent placed a call to Ms. Rodriquez's cellular telephone and left the following message on Ms. Rodriquez's voice mail: "This message is intended for Ms. Sarah Rodriguez. Ms. Rodriguez, this is Aaron Demillo with Schwartz and Goldstein Consulting Group. I received your voicemail in regards to your documentation. I do apologize. They had your email incorrect. I did physically sign the form with your email as being one digit off. I did enter your email address that was incorrect so they're going to go ahead and send you out another documentation to the correct email address that I had on file for you but you should be receiving that today, okay? If you have any questions Sarah please give me a call at 972-598-9538. Thank you."

104.    On July 30, 2019, Defendants' employee and agent placed a call to Ms.

Rodriquez's cellular telephone and left the following message on Ms. Rodriquez's voice mail: "Ms. Rodriguez, this is Jordan giving you a call regarding the auto loan, that settlement arrangement that we had set up for today for the $1,144.52. The payment did come back declined. You might have to call your bank. They tend to hold payments over $500. The payment processing name is MDRH Holdings and my direct line you can reach me on is 972-598-9542."

105.     On July 31, 2019, Defendants' employee and agent placed a call to Ms. Rodriquez's cellular telephone and left the following message on Ms. Rodriquez's voice mail: "Ms. Rodriquez, my name is Mr. Mike McNellis. I'm calling you in regards to a settlement that you did have for yesterday the 30th of July in the amount of $1,144.52. That amount was never paid and the amount did decline. Accordingly, we have to proceed immediately with the litigation. That decision is up to you if you want to take care of it. Give a call back at 972-598-9541 by the end of the day. If you do not, we will just move forward with wage garnishments to get our funds. Feel free to figure out your position. Again, my name is Mike McNellis. Call me back at 972-598-9541

106.     The above-described threats and representations made by Defendants and their employees and agents were false and part of a scripted and unlawful, criminal debt collection practice that is ongoing and is currently being perpetrated by Defendants to criminally extort the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

107.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

108.     Defendants and their employees and agents falsely represented the amount of Ms.

Rodriguez's alleged debt.

109.    Defendants and their employees and agents falsely represented that they had the right to collect the alleged debt.

110.    Defendants and their employees and agents falsely represented and falsely implied that Defendants managed litigation for lawyers.

111.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

112.    Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

113.    Defendants and their employees and agents falsely represented and falsely implied that Defendants are lawyers.

114.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Rodriguez to collect the alleged debt.

115.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Rodriguez to collect the alleged debt.

116.    Defendants and their employees and agents falsely represented and falsely implied that a process server would be coming to Ms. Rodriguez's residence or place of employment.

117.    Defendants and their employees and agents falsely represented and falsely implied that if Ms. Rodriguez did not agree that day to pay money to Defendants by the end of the month, Ms. Rodriguez would have to appear in court and the judge would rule that Ms. Rodriguez owed thousands of dollars more in interest, court costs and attorney fees.

118.    Defendants and their employees and agents falsely represented and falsely

implied that if Ms. Rodriquez did not agree that day to pay money to Defendants, then Defendants would garnish Ms. Rodriguez's wages.

119. Defendants and their employees and agents falsely represented and falsely implied that the alleged debt as negatively affecting Ms. Rodriguez's credit.

120. Defendants and their employees and agents falsely represented and falsely implied that if Ms. Rodriguez paid money to Defendants, Defendants would report the payment to the credit bureaus and improve Ms. Rodriguez's credit.

121. Defendants and their employees and agents falsely represented and falsely implied that Ms. Rodriguez had committed fraud.

122. Defendants and their employees and agents falsely represented and falsely implied that Ms. Rodriguez had committed a crime.

123. Defendants and their employees and agents falsely represented and falsely implied that Ms. Rodriguez would be prosecuted if she did not pay money to Defendants.

124. Defendants and their employees and agents falsely and wrongfully represented that Ms. Rodriguez was being sued to collect a debt that is time-barred and unenforceable by operation of law.

125. Defendants did not intend to file a lawsuit against Ms. Rodriguez in any court to collect the alleged debt.

126. No Defendant has ever filed any lawsuit in any court to collect any debt from any consumer.

127. Defendants and their employees and agents attempted to collect from Ms. Rodriguez a debt that Ms. Rodriguez does not owe.

128. Defendants and their employees and agents attempted to collect from Ms.

Rodriguez a debt that Defendants, and their employees and agents, have no legal right to collect.

129.    Defendants and their employees and agents falsely represented the identity of the entity for whom Defendants were attempting to collect the alleged debt.

130.    The FDCPA states that it is unlawful for a debt collector to engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

131.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

132.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

133.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

134.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

135.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

136.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. §

1692e(4).

137.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

138.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

139.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

140.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

141.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

142.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

143.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

144.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

145.     The FDCPA states that it is unlawful for a debt collector to collect any amount

34

unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

146.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

147.    Defendants and their employees and agents failed to timely send to Ms. Rodriguez a notice containing the information required by 15 U.S.C. § 1692g(a).

148.    The The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

149.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

150.    In connection with efforts to collect an alleged debt from Ms. Rodriguez, Defendants obtained and used personal information regarding Ms. Rodriguez that was obtained from a subscription-based internet database, compiled and maintained by a company such as LexisNexis Risk Management, Inc. (Accurint), TransUnion (TLO), UDT Group, LLC (Delvepointe) or Interactive Data, LLC, with the database being derived in part from non-public motor vehicle records, and with access to the database governed and restricted by the Drivers Privacy Protection Act. Every time that a subscriber logs on to such a database, the subscriber is

confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

151.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. Reno v. Condon, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). The DPPA states:

152.    Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

153.    False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record. 18 U.S.C. § 2722.

154.    The DPPA states: "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . 18 U.S.C. § 2725(3).

155.    The DPPA states: A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court. 18 U.S.C. § 2724(a).

156.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

157.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

36

or use personal information regarding Ms. Rodriguez.

158. Defendants accessed a restricted database to unlawfully obtain, disclose and use personal information regarding Ms. Rodriguez.

159. Defendants made a false representation to the entity maintaining the database to obtain personal information regarding Ms. Rodriguez that was derived from Ms. Rodriguez's motor vehicle record.

160. Alternatively, the entity that obtained disclosed Ms. Rodriguez's personal information to defendants, made a false representation to the entity maintaining the database to obtain personal information regarding Ms. Rodriguez that was derived from Ms. Rodriguez's motor vehicle record.

161. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

162. Defendants knowingly obtained, disclosed and used Ms. Rodriguez's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

163. No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Rodriquez's personal information obtained from Ms. Rodriguez's motor vehicle record.

164. No defendant had Ms. Rodriguez's consent, permission, authorization or waiver to obtain Ms. Rodriguez's personal information obtained from Ms. Rodriguez's motor vehicle record.

165. A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); Rasmusson v. Chisago County, 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

166.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. Margan v. Niles, 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

167.    All Defendants, and their employees and agents, are engaged in a scheme, through which they (a) steal or purchase stolen consumer account information, (b) use that stolen information to acquire additional personal information regarding the consumers in violation of the DPPA, and (c) place calls to the consumers' telephones and use unlawful debt collection tactics to collect money from consumers in violation of the FDCPA.

168.    Each Defendant and each Defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

169.    As an actual and proximate result of the acts and omissions of Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, Ms. Rodriguez has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

170.    Plaintiff incorporates the foregoing paragraphs by reference.

171.    Each Defendant has violated the FDCPA. Each Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural0 consequence of which is to harass, oppress, or abuse a person in connection with the

collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** Plaintiff seeks judgment against Defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

172.    Plaintiff incorporates the foregoing paragraphs by reference.

173.    Each Defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** Plaintiff seeks judgment against Defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting Defendants from further obtaining Plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring Defendants to provide Plaintiff with the original and all copies

of any and all documents of any kind that contain any of Plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f)      An injunction prohibiting Defendants from disseminating Plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

g)      An order requiring Defendants to provide Plaintiff with the original of all documents pursuant to which Defendants obtained Plaintiff's stolen account information, so that Plaintiff may take steps to determine the identity of all entities that have had possession of his stolen account information and thereby enable Plaintiff to pursue those entities in efforts to protect Plaintiff's credit identify from being further compromised, disseminated and harmed.

Dated: September 6, 2019

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com